**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, AKRON OHIO**

| | | |
|---|---|---|
| WOOSTER INDUSTRIAL PARK, LLC | : | |
| 449 Freedlander Rd. | | |
| Wooster, OH 44691, | : | |
| | | |
| and | : | |
| | | |
| WOOSTER INDUSTRIAL PARK | : | |
| PROPERTY MANAGEMENT, LLC | | |
| 449 Freedlander Rd. | : | |
| Wooster, OH 44691, | | |
| | : | |
| Plaintiffs, | | |
| | : | |
| | | |
| vs. | | |
| | : | Case No. _____ |
| THE CITY OF WOOSTER | | |
| 538 North Market St. | : | |
| Wooster, OH 44691 | | |
| | : | COMPLAINT |
| and | | |
| | : | |
| JOEL MONTGOMERY, | | |
| DIRECTOR OF ADMINISTRATION | : | |
| OF | | |
| THE CITY OF WOOSTER | : | |
| 538 North Market St. | | |
| Wooster, OH 44691 | : | |
| | | |
| and | : | |
| | | |
| TOWERCO LLC | : | |
| 5000 Valleystone Dr | | |
| Suite 200 | : | |
| Cary, NC 27519: | | |
| | : | |
| Defendants. | | |

NOW COME THE PLAINTIFFS, Wooster Industrial Park, LLC and Wooster Industrial Park Property Management, LLC, and for their Complaint, pleads as follows:

<u>PARTIES</u>

1. Plaintiff Wooster Industrial Park, LLC is an Ohio Limited Liability Company owning property in Wooster, Ohio.

2. Plaintiff Wooster Industrial Park Property Management, LLC is an Ohio Limited Liability Company engaged in leasing, managing and developing property in Wooster, Ohio, including property owned by Wooster Industrial Park, LLC.

3. Defendant the City of Wooster (hereinafter the "City") is a charter municipal corporation created under the laws of the State of Ohio.

4. Defendant Joel Montgomery is the Director of Administration of the City of Wooster.

5. Defendant TowerCo, LLC is a Delaware Limited Liability Company with its headquarters in Cary, North Carolina.

<u>FACTS</u>

6. In January of 2013, Defendant Montgomery was contacted by Christine Phillips, a representative of Real Estate Site Development who was researching possible alternate locations for their Sprint cellular equipment that was on a smokestack at The College of Wooster that was slated for demolition during the college's summer break of 2013.

2

7. Over the course of the next few months, several locations for a new cell phone tower were explored by the city administration, including city owned properties at 1859 Burbank Ave. (hereinafter the "Layton property") and the Christmas Run Pool.

8. On June 24th, 2013, TowerCo, a cell phone tower development company, sent a proposal to the City.  This proposal was for TowerCo to lease a 100' x 100' area at the Layton property.  TowerCo would pay the City $1,400.00 per month for the ground upon which it would build a tower, which TowerCo would own.  The City would be able to place its equipment on the tower free of charge.  The rent would include locating equipment from Verizon on the tower, plus an additional $800 for each cellular providers' equipment that TowerCo located on the tower.  See Exhibit A, TowerCo Proposal of June 24th, 2013.

9. After some internal discussion, Defendant Montgomery indicated to the cellular providers and TowerCo that, should the City Council and the Mayor approve, the agreement with TowerCo would be entered into and a 199' tower constructed on the Layton property.

10. On August 16th, 2013, a Public Notice letter was sent by Defendant Joel Montgomery, in his capacity as the Director of Administration of the City of Wooster, to residents living near the Layton property, informing them of the City's intent to construct a "a mono-pole (solid pole, no guy wires, no lattice)" telecommunications tower "within a 100' x 100' area on the Layton property" and "just less than 200' tall". See Exhibit B, Public Notice of August 16th, 2013.

11. This Public Notice also asserted that "Current City zoning ordinances also exempt antenna towers from the need for a zoning permit as long as the tower serves a public purpose."

12. This assertion, though incorrectly quoting the relevant ordinance, was necessary as the Layton property was within an area zoned for residential use and Chapter 1173 of the Codified Ordinances of the City of Wooster places heavy regulatory burdens on Wireless Telecommunications Facilities in residential areas which the proposed tower would not be able to meet.

13. Only three days later, on August 19th, 2013 an ordinance styled "Ordinance No. 2013-36: An ordinance authorizing the Director of Administration to enter into a technical services contract with a qualified vendor for the construction and maintenance of a communications tower and related facilities on City-owned property; and declaring an emergency" (hereinafter the "Ordinance") was introduced in the City Council of the City of Wooster.  See Exhibit C, Ordinance No. 2013-36.

14. Of the proposed tower, the Ordinance states, "the primary purpose of which will be to facilitate radio and/or cellular communications for the police, fire maintenance and utilities division of the municipal government."

15. The Ordinance goes on, however, to state "provided that the vendor may, in addition thereto, provide for facilities that will also serve cellular providers within the city of Wooster."

16. In Section 3 of the Ordinance, as part of the declaration of the Ordinance as an emergency, the Ordinance states, "this Ordinance is hereby declared to be an emergency measure . . . for the further reason that prompt action is necessary to facilitate such agreements for the benefit of local cellular services".

17. City officials have, at various times, asserted that the need for the construction of the tower on the Layton property is to facilitate removal of city communications equipment from a nearby water tower which is intended to be demolished in 2014.

18. This water tower also houses cellular communications equipment, currently, from which the City gets approximately $50,000 per year in rent.  See Exhibit D, *City of Wooster Layton Property Presentation: "Benefits Continued"*.

19. After the City's plans for the tower became publicly known, the residents of the neighborhood surrounding the Layton property began to strenuously voice their objections.

20. This led to the City scheduling an informational meeting, on October 1st, 2013.

21. After this meeting the Ordinance was tabled until the meeting of the City Council of the City on November 18th, 2013, at which time it was approved by the City Council and passed, effective immediately upon signature of the Mayor.

22. The City, however, does not need a 199' tower for its own equipment.  In fact, City officials have publicly indicated that a tower of only 120' would meet their

communications needs.  See Exhibit E, *City of Wooster Layton Property Presentation: "Technical & Financial Considerations"*.

23. The sole purpose, therefore, for using the City's supposed exemption from its own zoning code to construct a 199' tower, as opposed to a 120' tower, is to profit from the lease with TowerCo and engage in the business of leasing land for Wireless Telecommunications Facilities within the City of Wooster.

24. The City's supposed exemption from the zoning code for "Wireless Telecommunications Facilities" on City-owned land "currently used for public services," as set forth in Chapter 1173.09 of the Codified Ordinances of the City of Wooster, gives the City an unbeatable competitive advantage in the market for land leasable for Wireless Telecommunications Facilities within the City of Wooster, generally, and an effective monopoly in the market for land leasable for Wireless Telecommunications Facilities in areas zoned residential.  See Exhibit F, *Chapter 1173 of the Codified Ordinances of the City of Wooster*.

25. Private land owners and private development companies, such as the Plaintiffs, face steep hurdles in getting approval for a Wireless Telecommunications Facility on their property, as the arduous regulatory requirements outlined in the remainder of Chapter 1173 of the Codified Ordinances of the City of Wooster painfully illustrate.  See *Id.*

26. Private land owners are permitted to construct a Wireless Telecommunications Tower in areas of the City zoned for residential use only if the property has an institutional use, such as a church, school or hospital, and then only upon presenting substantial evidence to the Planning Commission that it is not technically feasible to construct the tower in a nonresidential zone.  See *Id.* at 1173.04.

27. Indeed, since Chapter 1173 of the Codified Ordinances of the City of Wooster was enacted in its present form, no private land owner has been able to secure approval for a Wireless Telecommunications Tower within the City of Wooster, regardless of the zoning designation of their property.

<u>JURISDICTION AND VENUE</u>

28. This is civil action under the 15 U.S.C. § 1 and 15 U.S.C. § 2 for which the jurisdiction of this Court exists under 28 U.S.C § 1337.  Jurisdiction for Count 4 is proper under the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

29. The Plaintiffs also seek declaratory relief under 28 U.S.C. § 2201.

30. Venue is proper pursuant to 28 U.S.C. § 91 as the Defendants reside in the Northern District of Ohio, are subject to personal jurisdiction in the Northern District of Ohio, and/or a substantial portion of the events giving rise to the Plaintiff's claims occurred in the Northern District of Ohio.

<u>COUNT ONE</u>

<u>CONSPIRACY IN RESTRAINT OF TRADE</u>

31. The Plaintiffs hereby incorporate all above paragraphs as if fully rewritten herein.

32. By engaging in the conduct above the City of Wooster conspired with TowerCo to restrain trade or commerce within the City of Wooster.

33. More specifically, the City of Wooster is using its supposed exemption from the zoning ordinances governing the construction and location of Wireless Telecommunications Facilities to enter into an agreement with TowerCo to construct a commercial Wireless Telecommunications Tower, for the City's private economic gain, free from the requirements and restrictions other landowners would face in attempting to enter into a similar agreement for the construction and location of a Wireless Telecommunications Facility on their similarly situated land.

34. The City and TowerCo, by taking advantage of the City's supposed exemption from the zoning ordinances governing the construction and location of Wireless Telecommunications Facilities, have injured the competition in the market for land leasable for Wireless Telecommunications Facilities within the City of Wooster and raised barriers to entry into that market that foreclose meaningful competition.

35. The City and TowerCo, by taking advantage of the City's supposed exemption from the zoning ordinances governing the construction and location of Wireless Telecommunications Facilities, have also injured the competition in the market for

tower space leasable to cellular services providers within the City of Wooster and raised barriers to entry into that market that foreclose meaningful competition.

36. The conduct engaged in by the City and TowerCo involves and affects interstate commerce.

37. There is no clearly articulated nor affirmatively expressed state policy in Ohio from which the above described actions would foreseeably result, nor as to TowerCo, does any such policy, if it existed, exist under active state supervision.

38. As a direct and proximate cause of the conduct of the City and TowerCo, the Plaintiffs have been injured in their business and property in that (a) they suffer diminution of the value of their property; (b) they suffer diminution in their going concern value; (c) their ability to enter into the Wireless Telecommunication Facility land leasing market is impaired.

<u>COUNT TWO</u>

<u>ATTEMPTED MONOPOLIZATION (LAND)</u>

39. The Plaintiffs hereby incorporate all above paragraphs as if fully rewritten herein.

40. By engaging in the conduct set forth above, specifically by excluding portions of its own land from the regulatory requirements of Chapter 1173 of the Codified Ordinances of the City of Wooster and, subsequently, authorizing the Director of Administration to enter into an agreement to build a commercial Wireless Telecommunications Facility for the City's own profit, the City has significantly

injured competition in the market for land leasable for Wireless Telecommunications Facilities within the City of Wooster.

41. The City engaged in the conduct set forth above with the intent of profiting from the monopolization of the market for land available for Wireless Telecommunications Facilities within the geographical limits of the City of Wooster, generally, and within the areas of the City of Wooster zoned for residential use, more specifically.

42. The conduct engaged in by the City involves and affects interstate commerce.

43. There is no clearly articulated nor affirmatively expressed state policy from which the above described actions which would foreseeably result.

44. As a direct and proximate cause of the conduct of the City, the Plaintiffs have been injured in their business and property in that (a) they suffer diminution of the value of their property; (b) they suffer diminution in their going concern value; (c) their ability to enter into the Wireless Telecommunication Facility land leasing market is impaired.

<u>COUNT THREE</u>

<u>ATTEMPTED CONSPIRACY TO MONOPOLIZE (TOWER SPACE)</u>

45. The Plaintiffs hereby incorporate all above paragraphs as if fully rewritten herein.

46. By engaging in the conduct set forth above, specifically by excluding portions of its own land from the regulatory requirements of Chapter 1173 of the Codified Ordinances of the City of Wooster and, subsequently, authorizing the Director of

Administration to enter into an agreement to build a commercial Wireless Telecommunications Facility for the City's own profit, the City has significantly injured competition in the market for tower space leasable to cellular services providers within the City of Wooster and, more specifically, within the residentially zoned areas thereof.

47. The City, along with TowerCo, engaged in the conduct set forth above with the intent of profiting from the  monopolization of the market for tower space leasable to cellular services providers within the geographical limits of the City of Wooster, generally, and within the areas of the City of Wooster zoned for residential use, more specifically.

48. The conduct engaged in by the City involves and affects interstate commerce.

49. There is no clearly articulated nor affirmatively expressed state policy in Ohio from which the above described actions would foreseeably result, nor as to TowerCo, does any such policy, if it existed, exist under active state supervision.

50. As a direct and proximate cause of the conduct of the City, the Plaintiffs have been injured in their business and property in that (a) they suffer diminution of the value of their property; (b) they suffer diminution in their going concern value; (c) their ability to enter into the Wireless Telecommunication Facility land leasing market is impaired.

## COUNT FOUR

## ACTION IN VIOLATION OF CHARTER

51. The Plaintiffs hereby incorporate all above paragraphs as if fully rewritten herein.

52. The Ordinance at issue in this case was adopted as an "emergency" ordinance pursuant to Section 2.11 of the Charter of the City of Wooster.

53. Section 2.12 of the charter of the city of Wooster sets forth "Actions not Permitted as Emergencies" and states, "No action of Council authorizing the surrender or joint exercise of its powers, or in granting a franchise, or in establishing new positions, classified or unclassified, or in the enactment, amendment or repeal of any zoning or building resolution or ordinance, or in the change of any ward boundaries, or in authorizing any change in the boundaries of the Municipality, shall be enacted as an emergency ordinance."  See Exhibit G, *Charter of the City of Wooster* at §2.12.

54. By entering into a technical services contract with a qualified vendor for the construction and maintenance of a communications tower and related facilities on City-owned property, the City is granting to that vendor, here TowerCo, a franchise.

55. The ability to construct a Wireless Telecommunications Facility under the claimed exemption of Chapter 1173.09 is a right belonging to City and the City allowing TowerCo to construct a tower, owned by TowerCo, under that exemption, is a grant of that right as a franchise to TowerCo.

56. As granting a franchise is not permitted as an emergency action under the Charter of the City of Wooster, the emergency nature of the Ordinance must be null and void.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment on their behalf:

A. Directing the Defendants to pay to the Plaintiffs threefold the damages determined to have been sustained by the Plaintiffs as a result of the violations of antitrust law set forth above, reasonable attorneys' fees and costs as provided in 15 U.S.C. § 15.

B. Declaring that the City of Wooster's use of its zoning ordinances anti-competitively to benefit the City's own property in the market for land leasable for commercial Wireless Telecommunications Facilities within the geographical limits of the City of Wooster, generally, and within the areas of the City of Wooster zoned for residential use, more specifically, is contrary to federal law;

C. Declaring that the City of Wooster's use of its zoning ordinances anti-competitively to benefit the City and TowerCo in the market for tower space leasable to cellular services providers within the geographical limits of the City of Wooster, generally, and within the areas of the City of Wooster zoned for residential use, more specifically, is contrary to federal law;

D. Declaring that the Ordinance is void insofar as it authorizes the Director of Administration to enter into an agreement which would have anti-competitive

effects on the market for land leasable for commercial Wireless Telecommunications Facilities within the geographical limits of the City of Wooster, generally, and within the areas of the City of Wooster zoned for residential use, more specifically;

E.    Declaring that the Ordinance is void insofar as it authorizes the Director of Administration to enter into an agreement which would have anti-competitive effects on the market for tower space leasable to cellular services providers within the geographical limits of the City of Wooster, generally, and within the areas of the City of Wooster zoned for residential use, more specifically;

F.    Declaring that the Ordinance is void insofar as it authorizes the Director of Administration to enter into an agreement which would have the effect of granting the City of Wooster a monopoly on commercial Wireless Telecommunications Facilities within areas of the City of Wooster zoned for residential use;

G.    Declaring that the designation of the Ordinance as an emergency ordinance is contrary to the Charter of the City of Wooster and that, to the extent the Ordinance is allowed to remain in force, it remains in force as a non-emergency ordinance;

H.    Enjoining the Director of Administration from entering into an agreement with TowerCo for the construction of a commercial Wireless Telecommunications

Facility over 120' at the Layton property; and

I.      Awarding the Plaintiffs such other relief as this Court may deem proper.


<u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues in this action.


Respectfully Submitted,


<u>s/Jason M. Storck</u>
Jason M. Storck (0077071)
Storck Law Office Ltd.
111 S. Buckeye, Suite 210
P.O. Box 1023
Wooster, OH 44691
(330) 263-0006 - Phone
(330) 263-0009 - Fax
jasonstorck@storcklawoffice.com
Attorney for Plaintiffs