**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION, AKRON OHIO**

| | | |
|---|---|---|
| WOOSTER INDUSTRIAL PARK, LLC, *et al.* | : | Case No. 5:13-cv-02729-SL |
| | : | JUDGE SARA LIOI |
| Plaintiffs, | : | PLAINTIFFS' FIRST AMENDED COMPLAINT |
| vs. | : | |
| THE CITY OF WOOSTER. *et al.* | : | |
| | : | |
| Defendants. | : | |

NOW COME THE PLAINTIFFS, Wooster Industrial Park, LLC and Wooster Industrial Park Property Management, LLC, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), for their First Amended Complaint, plead as follows:

<u>PARTIES</u>

1. Plaintiff Wooster Industrial Park, LLC is an Ohio Limited Liability Company owning property in Wooster, Ohio.

2. Plaintiff Wooster Industrial Park Property Management, LLC is an Ohio Limited Liability Company engaged in leasing, managing and developing property in Wooster, Ohio, including property owned by Wooster Industrial Park, LLC.

3. Defendant the City of Wooster (hereinafter the "City") is a charter municipal corporation created under the laws of the State of Ohio.

1

4. Defendant Joel Montgomery is the Director of Administration of the City of Wooster.

5. Defendant TowerCo 2013, LLC (hereinafter "TowerCo) is a Delaware Limited Liability Company with its headquarters in Cary, North Carolina.

FACTS

BACKGROUND

6. In January of 2013, Defendant Montgomery was contacted by Christine Phillips, a representative of Real Estate Site Development who was researching possible alternate locations for their Sprint cellular equipment that was on a smokestack at The College of Wooster that was slated for demolition during the college's summer break of 2013.

7. Over the course of the next few months, several locations for a new Wireless Telecommunications Tower were explored by the City, including City owned properties at 1859 Burbank Ave. (hereinafter the "Layton property") and the Christmas Run Pool.

8. On June 24th, 2013, TowerCo, a cell phone tower development company, sent a proposal to the City.  This proposal was for TowerCo to lease a 100' x 100' area at the Layton property.  TowerCo would pay the City $1,400.00 per month for the ground upon which it would build a 199' tower, which TowerCo would own.  The City would be able to place its equipment on the tower free of charge.  The rent would include locating equipment from Verizon on the tower, plus an additional

$800 for each cellular providers' equipment that TowerCo located on the tower. See Exhibit A, *TowerCo Proposal of June 24th, 2013.*

<u>TECHNICAL NEEDS OF THE CITY VS. CELLULAR PROVIDERS</u>

9.  The City has indicated its plans to demolish, at some point in 2014, one of the City's older water towers on which some of the City's own wireless communications equipment is currently placed.

10. This water tower also houses cellular communications equipment, currently, from which the City gets approximately $50,000 per year in rent.  See Exhibit D, *City of Wooster Layton Property Presentation: "Benefits Continued".*

11. The City, by its own public statements, has indicated that a 120' Wireless Telecommunications Tower would be sufficient for the City's own needs in relocating its wireless communications equipment.  See Exhibit E, *City of Wooster Layton Property Presentation: "Technical & Financial Considerations".*

12. The technical requirements of private cellular providers, however, require a Wireless Telecommunications Tower approximately 199' in height.

13. After some internal discussion, Defendant Montgomery indicated to the cellular providers and TowerCo that, should the City Council and the Mayor approve, the agreement with TowerCo would be entered into and a 199' Wireless Telecommunications Tower constructed on the Layton property.

14. While the City surely has the right to construct a Wireless Communications Facility adequate for its own telecommunications needs, the City has affirmatively stated that it only needs a 120' tower for this purpose.

15. The City is, by its own admission, seeking to construct this Wireless Telecommunications Tower to 199', instead of 120', for the sole reason of obtaining private economic gain from participating in the relevant markets, set forth below.

CITY EXEMPTION FROM ZONING REGULATIONS

16. The construction, location and use of Wireless Telecommunications Facilities and Towers is governed by Chapter 1173 of the Codified Ordinances of the City of Wooster.

17. Various sections of that Chapter regulate things such as the location of a Wireless Telecommunications Facilities or Tower, the construction, signage and lighting requirements for a Wireless Telecommunications Facilities or Tower, and requirements regarding colocation of equipment from multiple providers.  See Exhibit F, *Chapter 1173 of the Codified Ordinances of the city of Wooster.*

18. That Chapter also sets forth a procedure by which siting and construction of a Wireless Telecommunications Facilities or Tower is approved.  See *Id.*

19. On August 16th, 2013, a Public Notice letter was sent by Defendant Joel Montgomery, in his capacity as the Director of Administration of the City, to residents living near the Layton property, informing them of the City's intent to

4

construct a "a mono-pole (solid pole, no guy wires, no lattice)" telecommunications tower "within a 100' x 100' area on the Layton property" and "just less than 200' tall". <u>See Exhibit B</u>, *Public Notice of August 16th, 2013.*

20. This Public Notice also asserted that "Current City zoning ordinances also exempt antenna towers from the need for a zoning permit as long as the tower serves a public purpose."

21. This assertion incorrectly characterizes the relevant Codified Ordinance, §1173.09, which actually states,

> "Regardless of the provisions of this Chapter, a Wireless Telecommunication Facility may be permitted on any property owned or controlled by the City and currently used for public services, and such Facility shall be constructed, erected, maintained, extended and removed under such conditions, standards and regulations as may be required by the City Council."

22. This language exempts all aspects of the above described Wireless Telecommunications Tower on the Layton property from every single requirement found in the rest of Chapter 1173.

<u>ORDINANCE NO. 2013-36</u>

23. On August 19th, 2013 an ordinance styled "Ordinance No. 2013-36: An ordinance authorizing the Director of Administration to enter into a technical services contract with a qualified vendor for the construction and maintenance of a communications tower and related facilities on City-owned property; and declaring an

5

emergency" (hereinafter the "Ordinance") was introduced in the City Council of the City of Wooster.  See Exhibit C, *Ordinance No. 2013-36.*

24. Of the proposed tower, the Ordinance states, "the primary purpose of which will be to facilitate radio and/or cellular communications for the police, fire maintenance and utilities division of the municipal government."

25. The Ordinance goes on, however, to state "provided that the vendor may, in addition thereto, provide for facilities that will also serve cellular providers within the city of Wooster."

26. As outlined in the TowerCo proposal and as asserted by the City itself, the City would profit from any private cellular service providers that locate their equipment on the proposed Wireless Telecommunications Tower.

27. This Ordinance was passed by the City Council of the City on November 18th, 2013 and became effective upon the signature of the Mayor the next day.

<u>RELEVANT MARKETS AND MARKET POWER</u>

28. The relevant markets implicated in this action are (1) the market for land leasable for the location of Wireless Telecommunications Facilities that are technically adequate to provide private cellular services; and (2) the market in leasable space on Wireless Telecommunications Towers that is technically adequate to provide private cellular services.

29. The relevant geographic market for the above is that within the boundaries of Wooster, as within that geographic area, the City has the ability to undercut any alternate market participants in the above markets, to eliminate meaningful competition, and to harm consumers in those markets.

30. This relevant geographic market is distinct as, in order to provide adequate cellular and data service for their customers within Wooster, it is necessary that cellular providers site Wireless Telecommunications Facilities within the boundaries of Wooster.

31. The City has the market power to accomplish anticompetitive effects on the relevant markets through the application of the exemption of Wireless Telecommunications Facilities constructed on land owned or controlled by the City from the requirements of Chapter 1173 of the Codified Ordinances of the City of Wooster  (hereinafter the "§1173.09 exemption.")  See Exhibit F, *Chapter 1173 of the Codified Ordinances of the City of Wooster at §1173.09.*

32. Private land owners and private development companies, such as the Plaintiffs, face steep hurdles to constructing Wireless Telecommunications Facilities on their property, as the arduous regulatory requirements outlined in Chapter 1173 of the Codified Ordinances of the City of Wooster painfully illustrate.  See *Id., generally.*

33. Theses include complying with all of the zoning application and approval procedures set forth in Chapter 1107 of the Codified Ordinances, siting the Facility

or Tower only within certain areas of Wooster, not locating within certain distances of areas of Wooster zoned residential or within certain distances from a dwelling, requiring owners to allow for the maximum amount of co-location as a condition of receiving a conditional use permit, and various extremely specific design and construction requirements, among others.  See *Id.*

34. Private land owners and development companies, such as the Plaintiffs, are, in fact, forbidden from constructing Wireless Telecommunications Towers in large areas of Wooster.[1]  See *Id.* at §1173.04.

35. Due to the exemption in §1173.09, the City is free to wholly disregard all the requirements of Chapter 1173 on land it owns or controls, giving the City virtually unlimited power to advantage itself in any of a number of ways in the relevant markets.

36. Ordinance No. 2013-36 is an example of the City using the virtually boundless market power resulting from the §1173.09 exemption to participate in the relevant markets in a manner that would be forbidden to private land owners and private development companies, such as the Plaintiffs, and thus to anticompetitively dominate those markets.

---

[1] §1173.04(b) states:  "A wireless telecommunication facility that includes a tower shall not be permitted in a single-family or multi-family residential district with the exception of placement on any property with an institutional use (e.g. church, park, library, municipal government, hospital, school, utility) located in these districts. However, antennas attached to existing buildings or structures are permitted. In applying for a permit in any residential district, the applicant must present substantial evidence as to why it is not technically feasible to locate in a more appropriate nonresidential zone."

37. The City, in seeking to contract with TowerCo for the construction of a Wireless Communications Tower on property that falls within the §1173.09 exemption, is allowing TowerCo to share in the City's dominant power in the market in leasable space on Wireless Telecommunications Towers that is technically adequate to provide cellular services within Wooster.

38. By building a Wireless Telecommunications Tower on property owned or controlled by the City, TowerCo will not be subject to any of the restrictions of Chapter 1173, restrictions that would apply if TowerCo, or any other private developer of Wireless Communications Towers, were seeking to build such a facility on any private property within Wooster.

39. This freedom from the requirements of Chapter 1173 gives TowerCo a similar, virtually unlimited, market power in the market in leasable space on Wireless Telecommunications Towers that is technically adequate to provide cellular services within Wooster.

40. That the §1173.09 exemption allows the City, and those, like TowerCo, to whom it grants the right to benefit from that exemption, to hold dominant power in the relevant markets is evidenced by the fact that since Chapter 1173 of the Codified Ordinances of the City of Wooster was enacted in its present form, no private land owner or developer has secured approval for a Wireless Telecommunications Tower within the City of Wooster.

JURISDICTION AND VENUE

41. This is civil action under the 15 U.S.C. § 1 and 15 U.S.C. § 2 for which the jurisdiction of this Court exists under 28 U.S.C § 1337.

42. The Plaintiffs also seek declaratory relief under 28 U.S.C. § 2201.

43. Venue is proper pursuant to 28 U.S.C. § 91 as the Defendants reside in the Northern District of Ohio, are subject to personal jurisdiction in the Northern District of Ohio, and/or a substantial portion of the events giving rise to the Plaintiff's claims occurred in the Northern District of Ohio.

COUNT ONE

CONSPIRACY IN RESTRAINT OF TRADE

44. The Plaintiffs hereby incorporate all above paragraphs as if fully rewritten herein.

45. 15 U.S.C. § 1 states that "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." *15 U.S.C. §1*.

46. The City is using the §1173.09 exemption to construct a commercial Wireless Telecommunications Tower, for the City's private economic gain, free from the requirements and restrictions other landowners would face under Chapter 1173 in attempting to construct a Wireless Telecommunications Facility.

47. The City and TowerCo, by taking advantage of the City's 1173.09 exemption, have injured the competition in the market in leasable space on Wireless

Telecommunications Towers that is technically adequate to provide private cellular services within Wooster and raised barriers to entry into that market that forecloses meaningful competition.

48. By foreclosing meaningful competition, the City and TowerCo have acted in a manner that will result in consumers, in the relevant market, paying higher prices and facing a reduction in the quantity and quality of options.

49. The conduct engaged in by the City and TowerCo involves, and adversely affects, interstate commerce.

50. There is no clearly articulated nor affirmatively expressed state policy in Ohio for a municipality to exempt itself from its own zoning laws in order to gain a market advantage in a purely private business activity that the municipality is engaged in for its private economic gain, nor one from which these actions would foreseeably result.

51. Additionally, the State of Ohio's general grants of authority to the City, such as the authority to zone or contract, do not contemplate the City exempting itself from its own zoning laws in order to gain a market advantage in a purely private business activity that the City is engaged in for its private economic gain and, therefore, do not immunize the City from antitrust liability.

52. As to TowerCo, there is no clearly articulated nor affirmatively expressed state policy in Ohio for a municipality to exempt itself from its own zoning laws in order to gain a

market advantage in a purely private business activity the City is engaged in for its private economic gain, or to effectively delegate that exemption to a private developer, nor one from which these actions would foreseeably result.  Any such policy, if it exists, does not exist under active state supervision.  As such, TowerCo is not immune from antitrust liability for the actions set forth herein.

53. Additionally, as to TowerCo, the terms of the Option and Ground Use Agreement included as part of the TowerCo proposal, and the lack of specific requirements present in the Ordinance, would effectively make TowerCo the independent decision maker regarding decisions which directly impact consumers in the relevant market, putting it outside any antitrust immunity claimed by the City.

54. Plaintiffs own, or may otherwise have available to them for development, properties within Wooster which are subject to the requirements of Chapter 1173.  Prior to the enactment of the Ordinance, Plaintiffs had been in contact with the representatives of at least one cellular provider about the possible development of property for the location of a commercial Wireless Telecommunications Facility or Tower.

55. As a direct and proximate result of the anticompetitive and trade restraining conduct of the City and TowerCo in the relevant market, described above, the Plaintiffs, competitors with the City and TowerCo in that market, have suffered, or there is a dangerous likelihood they will suffer, injury in their business and property in the nature of (a) diminution of the value of their property; (b) diminution in their going concern value; and (c) impairment in their ability to enter into the market in leasable

space on Wireless Telecommunications Towers within Wooster that is technically adequate to provide private cellular services.

<u>COUNT TWO</u>

<u>ATTEMPTED MONOPOLIZATION (LAND)</u>

56. The Plaintiffs hereby incorporate all above paragraphs as if fully rewritten herein.

57. 15 U.S.C. § 2 makes it illegal to "...monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations..." <u>15 U.S.C. §2</u>.

58. By using the §1173.09 exemption to market City land as potential locations for Wireless Telecommunications Towers of such a height that they exceed the City's own needs and would be technically adequate to be leased to private cellular providers, the City has engaged in anticompetitive conduct.

59. The City engaged in this anticompetitive conduct for its private economic gain and with the intent of profiting from the monopolization of the market for land leasable for the location of Wireless Telecommunications Towers that are technically adequate to provide private cellular services.

60. Given the restrictions of Chapter 1173 on the construction of Wireless Communication Towers on land not owned or controlled by the City, and given the unquestionable anticompetitive market advantage the City enjoys from being able

to claim the §1173.09 exemption therefrom, there is a dangerous probability of the City achieving monopoly power in the market for land leasable for the location of Wireless Telecommunications Facilities that are technically adequate to provide private cellular services.

61. If the City achieves monopoly power in the relevant market it will result in consumers, in that market, paying higher prices and facing a reduction in the quantity and quality of options.

62. The conduct engaged in by the City involves and affects interstate commerce.

63. There is no clearly articulated nor affirmatively expressed state policy in Ohio for a municipality to exempt itself from its own zoning laws in order to seek a monopoly position in a purely private market when the municipality is acting for its own private economic gain, nor one from which these actions would foreseeably result.

64. Additionally, the State of Ohio's general grants of authority to the City, such as the authority to zone or contract, do not contemplate the City exempting itself from its own zoning laws in order to gain a market advantage in a purely private business activity that the City is engaged in for its private economic gain and, therefore, do not immunize the City from antitrust liability.

65. Plaintiffs own, or may otherwise have available to them for development, properties within Wooster which are subject to the requirements of Chapter 1173.  Prior to the enactment of the Ordinance, Plaintiffs had been in contact with the representatives

of at least one cellular provider about the possible development of property for the location of a commercial Wireless Telecommunications Facility or Tower.

66. As a direct and proximate result of the attempted monopolization of the relevant market by the City, described above, the Plaintiffs, competitors in that relevant market, have suffered, or there is a dangerous likelihood they will suffer, injury in their business and property in the nature of (a) diminution of the value of their property; (b) diminution in their going concern value; and (c) impairment in their ability to enter into the market for land leasable for the location of Wireless Telecommunications Facilities that are technically adequate to provide private cellular services.

<u>COUNT THREE</u>

<u>ATTEMPTED MONOPOLIZATION (TOWER SPACE)</u>

67. The Plaintiffs hereby incorporate all above paragraphs as if fully rewritten herein.

68. 15 U.S.C. § 2 makes it illegal to "...monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations..." *15 U.S.C. §2*.

69. By excluding portions of its own land from the requirements of Chapter 1173 and, subsequently, authorizing the Director of Administration to enter into an agreement to build a commercial height Wireless Telecommunications Tower for the City's private economic gain, the City has significantly injured competition in the market in

leasable space on Wireless Telecommunications Towers within Wooster that is technically adequate to provide private cellular services.

70. In doing so, the City has acted anticompetitively, for its private economic gain, and with the intent of profiting from the monopolization of the market in leasable space on Wireless Telecommunications Towers within Wooster that is technically adequate to provide private cellular services.

71. Given the restrictions of Chapter 1173 on the construction of Wireless Communication Towers on land not owned or controlled by the City, and given the unquestionable anticompetitive market advantage the City enjoys from being able to claim the §1173.09 exemption therefrom, there is a dangerous probability of the City achieving monopoly power in the market in leasable space on Wireless Telecommunications Towers within Wooster that is technically adequate to provide private cellular services.

72. If the City achieves monopoly power in the relevant market it will result in consumers, in that market, paying higher prices and facing a reduction in the quantity and quality of options.

73. The conduct engaged in by the City involves and affects interstate commerce.

74. There is no clearly articulated nor affirmatively expressed state policy in Ohio for a municipality to exempt itself from its own zoning laws in order to seek a monopoly position in a purely private market when the municipality is acting for its private

economic gain, nor one from which these actions would foreseeably result and, as such, the City is not immune from antitrust liability for the actions set forth herein.

75. Additionally, the State of Ohio's general grants of authority to the City, such as the authority to zone or contract, do not contemplate the City exempting itself from its own zoning laws in order to gain a market advantage in a purely private business activity that the City is engaged in for its private economic gain and, therefore, do not immunize the City from antitrust liability.

76. Plaintiffs own, or may otherwise have available to them for development, properties within Wooster which are subject to the requirements of Chapter 1173.  Prior to the enactment of the Ordinance, Plaintiffs had been in contact with the representatives of at least one cellular provider about the possible development of property for the location of a commercial Wireless Telecommunications Facility or Tower.

77. As a direct and proximate result of the attempted monopolization of the relevant market by the City, described above, the Plaintiffs, competitors in that relevant market, have suffered, or there is a dangerous likelihood they will suffer, injury in their business and property in the nature of (a) diminution of the value of their property; (b) diminution in their going concern value; and (c) impairment in their ability to enter into the market in leasable space on Wireless Telecommunications Towers within Wooster that is technically adequate to provide private cellular services.

<u>COUNT FOUR</u>

<u>CONSPIRACY TO MONOPOLIZE (TOWER SPACE)</u>

78. The Plaintiffs hereby incorporate all above paragraphs as if fully rewritten herein.

79. 15 U.S.C. § 2 makes it illegal to "...monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations..." *15 U.S.C. §2*.

80. The City and TowerCo, by taking advantage of the City's §1173.09 exemption from the Chapter 1173 regulations, have significantly injured competition in the market in leasable space on Wireless Telecommunications Towers within Wooster that is technically adequate to provide private cellular services.

81. In doing so, they have acted anticompetitively and with the intent of profiting from the monopolization of the market in leasable space on Wireless Telecommunications Towers within Wooster that is technically adequate to provide private cellular services.

82. Given the restrictions of Chapter 1173 on the construction of Wireless Communication Towers on land not owned or controlled by the City, and given the unquestionable anticompetitive market advantage the City enjoys from being able to claim the §1173.09 exemption therefrom, there is a dangerous probability of the City and TowerCo achieving monopoly power in the market in leasable space on

Wireless Telecommunications Towers within Wooster that is technically adequate to provide private cellular services.

83. If the City and TowerCo achieve monopoly power in the relevant market it will result in consumers, in that market, paying higher prices and facing a reduction in the quantity and quality of options.

84. The conduct engaged in by the City and TowerCo involves, and adversely affects, interstate commerce.

85. There is no clearly articulated nor affirmatively expressed state policy in Ohio for a municipality to exempt itself from its own zoning laws in order to seek a monopoly position in a purely private market when the municipality is acting for its private economic gain nor one from which these actions would foreseeably result.

86. Additionally, the State of Ohio's general grants of authority to the City, such as the authority to zone or contract, do not contemplate the City exempting itself from its own zoning laws in order to gain a market advantage in a purely private business activity that the City is engaged in for its private economic gain and, therefore, do not immunize the City from antitrust liability.

87. As to TowerCo, there is no clearly articulated nor affirmatively expressed state policy in Ohio for a municipality to exempt itself from its own zoning laws in order to seek a monopoly position in a purely private market when the municipality is acting for its private economic gain, or to effectively delegate that exemption to a private

developer, nor one from which these actions would foreseeably result.  Any such policy, if it exists, does not exist under active state supervision.  As such, TowerCo is not immune from antitrust liability for the actions set forth herein.

88. Additionally, as to TowerCo, the terms of the Option and Ground Use Agreement included as part of the TowerCo proposal, and the lack of specific requirements present in the Ordinance, would effectively make TowerCo the independent decision maker regarding decisions which directly impact consumers in the relevant market, putting it outside any antitrust immunity claimed by the City.

89. Plaintiffs own, or may otherwise have available to them for development, properties within Wooster which are subject to the requirements of Chapter 1173.  Prior to the enactment of the Ordinance, Plaintiffs had been in contact with the representatives of at least one cellular provider about the possible development of property for the location of a commercial Wireless Telecommunications Facility or Tower.

90. As a direct and proximate result of the City and TowerCo's conspiracy to monopolization of the relevant market, described above, the Plaintiffs, competitors in that relevant market, have suffered, or there is a dangerous likelihood they will suffer, injury in their business and property in the nature of (a) diminution of the value of their property; (b) diminution in their going concern value; and (c) impairment in their ability to enter into the market in leasable space on Wireless Telecommunications Towers within Wooster that is technically adequate to provide private cellular services.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment on their behalf:

A.  Directing the Defendants to pay to the Plaintiffs threefold the damages determined to have been sustained by the Plaintiffs as a result of the violations set forth above, reasonable attorneys' fees and costs as provided in 15 U.S.C. §15.

B.  Declaring that the City and TowerCo's use of the §1173.09 exemption injures competition and raises barriers to entry that forecloses meaningful competition in the market in leasable space on Wireless Telecommunications Towers that is technically adequate to provide private cellular services within Wooster and is contrary to federal law;

C.  Declaring that the City's use of the §1173.09 exemption to attempt to monopolize the relevant markets is contrary to federal law;

D.  Declaring that the City' and TowerCo's use of the §1173.09 exemption to conspire to monopolize the market in leasable space on Wireless Telecommunications Towers that is technically adequate to provide private cellular services within Wooster is contrary to federal law;

E.  Permanently enjoining the City and the Director of Administration from entering into an agreement with TowerCo, or any other vendor, for the construction of a commercial height Wireless Telecommunications Tower over 120' on the Layton property while claiming an exemption from the requirements of Chapter

1173 of the Codified Ordinances of the City of Wooster under the §1173.09 exemption;

F.   Permanently enjoining the City and the Director of Administration from entering into an agreement with TowerCo, or any other vendor, for the construction of a commercial height Wireless Telecommunications Tower that exceeds the City's own technical requirements, when the construction to the commercial height would be for the purpose of the City entering into the relevant markets for its private economic gain, on any City owned or controlled property while claiming an exemption from the requirements of Chapter 1173 of the Codified Ordinances of the City of Wooster under the §1173.09 exemption;

G.   Permanently enjoining the City from claiming the §1173.09 exemption when participating in the relevant markets for its private economic gain; and

H.   Awarding the Plaintiffs such other relief as this Court may deem proper.

<u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully Submitted,

s/Jason M. Storck
Jason M. Storck (0077071)
Storck Law Office Ltd.
111 S. Buckeye, Suite 210

P.O. Box 1023
Wooster, OH 44691
(330) 263-0006 - Phone
(330) 263-0009 - Fax
jasonstorck@storcklawoffice.com
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, along with all attachments thereto, was filed electronically with this Court's electronic filing system.  Notice of this filing will be sent to all parties by that system and the parties may access this filing through it.

s/Jason M. Storck
Jason M. Storck (0077071)