**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WOOSTER INDUSTRIAL PARK, LLC, et al., | ) ) ) | CASE NO. 5:13CV2729 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | |
| THE CITY OF WOOSTER, et al., | ) ) ) | **MEMORANDUM OPINION** |
| DEFENDANTS. | ) ) | |

Before the Court are the motion to dismiss of defendants City of Wooster and Joel Montgomery (Doc. No. 20 ["City MTD"]), and the motion to dismiss of defendant TowerCo LLC (Doc. No. 21 ["TowerCo MTD"]). Plaintiffs have opposed both motions (Doc. Nos. 23 and 24, respectively), and defendants filed replies (Doc. Nos. 26 and 25, respectively). For the reasons set forth herein, both motions to dismiss are **GRANTED**.

After the briefing was completed on the motions to dismiss, plaintiffs filed a motion for preliminary injunction and temporary restraining order. (Doc. No. 27.) In light of the ruling on the motions to dismiss, plaintiffs' motion is **DENIED.**

**I. BACKGROUND**

On December 11, 2013, plaintiffs Wooster Industrial Park, LLC ("WIP") and Wooster Industrial Park Property Management, LLC ("WIPPM") (collectively, "plaintiffs") filed a complaint against the City of Wooster ("the City" or "Wooster"), the City's Director of Administration Joel Montgomery ("Montgomery") (together, "the City defendants"), and

TowerCo LLC ("TowerCo"). A first amended complaint was filed on February 27, 2014. (Doc. No. 17 ["FAC" or "complaint"].)

The complaint, whose facts are taken as true for purposes of the motions to dismiss, alleges that WIP owns property in Wooster, a charter municipal corporation, and that WIPPM is engaged in leasing, managing and developing property in Wooster, including property owned by WIP. (FAC ¶¶ 1-3.) Defendant TowerCo is a cell phone tower development company headquartered in Cary, North Carolina. (*Id.* ¶¶ 5, 8.)

Wooster has previously located wireless communications equipment for some of its city services (including police, fire, maintenance, etc.) on an old water tower that it plans to demolish during 2014. The water tower also houses private cellular equipment that provides the City with about $50,000 in annual revenues in the form of rent. (*Id.* ¶¶ 9, 10, and Ex. B.[1]) For its own telecommunications purposes, the City needs a tower that is 120 feet in height; however, the private cellular providers who rent space on the City's tower require a tower approximately 199 feet tall. (*Id.* ¶¶ 11, 12.)

Wooster owns property at 1859 Burbank Road (the "Layton Property") that it purchased as a location for its new water tower, which it plans to build within the next five years. (*Id.* ¶ 7; Ex. B.) Since its experience with placing telecommunications equipment on its water tower has not been positive, due to the associated damage to the tower caused by structural stress, the City has decided to discontinue that practice. However, because it needs a telecommunications tower immediately and is also reluctant to forfeit the rental revenues from

---

[1] The various exhibits referenced herein are all attached to the complaint and are central to its claims. In ruling on a motion to dismiss under Fed. R. Civ. P. 12, a court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.* 259 F.3d 493, 502 (6th Cir. 2001).)

the cellular providers at its water tower cite, the City decided to build a separate telecommunications tower on the Layton Property. (*Id.*)

The construction, location and use of wireless telecommunications facilities and towers within the City is governed by Chapter 1173 of the Codified Ordinances of the City of Wooster. (*Id.* ¶ 16.) Section 1173.09 deals with "Exemption of Certain City Property" and provides:

> Regardless of the provisions of this Chapter, a Wireless Telecommunication Facility may be permitted on any property owned or controlled by the City and currently used for public services, and such Facility shall be constructed, erected, maintained, extended and removed under such conditions, standards and regulations as may be required by the City Council.

(*Id.* ¶ 21; Ex. F at 248.[2])

To further its plan to build the new tower, the City issued a public notice that, on August 19, 2013, the City Council would be considering legislation authorizing placement of the tower on the Layton Property and further authorizing the City to enter into a contract with a qualified contractor for construction and maintenance of the tower. (*Id.* Ex. B.) The public notice stated that the wireless facilities would be exempt from the City's zoning ordinances "as long as the tower serves a public purpose." (*Id.* Ex. B at 229.) It further stated: "However, due to the nature of the project and the location adjacent to residential properties, the City is communicating these plans with the public and inviting public input." (*Id.*)

On November 18, 2013, the City Council passed Ordinance No. 2013-36, authorizing Montgomery to enter into a technical services contract with a qualified vendor for construction and maintenance of the relevant facilities, and declaring that the ordinance was an

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

emergency measure. (*Id.* ¶¶ 23, 27; Ex. C.) The City subsequently accepted a proposal from defendant TowerCo[3] under which TowerCo would lease a 100-ft. square area at the Layton Property for $1,400/month. TowerCo would, in turn, construct a 199-ft. telecommunications tower on its leased land, allowing the City to place its equipment on the tower free of charge. TowerCo would also be permitted to rent space on the tower to other cellular providers and, for each such rental, it would pay the City an additional $800/month. (*Id.* ¶ 8; Ex. A.)

Plaintiffs allege that the City thereby engaged in anticompetitive behavior, using its exemption from zoning requirements to endow itself with "virtually boundless market power" to participate in the relevant markets "in a manner that would be forbidden to private land owners and private development companies, such as the [p]laintiffs[.]" (*Id.* ¶ 36.)[4] They assert that "the City has the ability to undercut any alternate market participants in the above markets, to eliminate meaningful competition, and to harm consumers in those markets." (*Id.* ¶ 29.) They further assert that, by contracting with TowerCo, the City "is allowing TowerCo to share in the City's dominant power in the market" without being "subject to any of the restrictions of Chapter 1173, restrictions that would apply if TowerCo . . . were seeking to build such a facility on any private property within Wooster." (*Id.* ¶¶ 37, 38.)

---

[3] The record is unclear as to whether this was submitted in response to a formal request for proposals. The Ordinance articulates that Montgomery had engaged in "preliminary discussions with representatives of vendors currently providing such [cellular] services within the city," and that he had concluded "it may be possible to negotiate an agreement with a tower contractor or cellular provider for the construction and maintenance of such facilities, thereby resulting in substantial savings to the city." (Doc. No. 17-3 ["Ordinance"] at 230.)

[4] The complaint defines the "relevant markets" as: "(1) the market for land leasable for the location of Wireless Telecommunications Facilities that are technically adequate to provide private cellular services; and (2) the market in leasable space on Wireless Telecommunications Towers that is technically adequate to provide private cellular services." (FAC ¶ 28.)

4

Plaintiffs allege that the actions of the City and TowerCo violate the Sherman Antitrust Act, Section 1, which prohibits conspiracies to restrain trade, and/or Section 2, which prohibits illegal monopolization of a market. 15 U.S.C. §§ 1, 2.

## II. MOTIONS TO DISMISS

### A.    Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,

552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

**B.      Analysis**

**1.      The City Defendants' Motion to Dismiss (Doc. No. 20)**

The City defendants set forth three reasons why dismissal of plaintiffs' complaint in its entirety, with prejudice, is warranted: plaintiffs' failure to establish either Article III or antitrust standing; the City defendants' absolute immunity from antitrust liability under the state-action doctrine; and plaintiffs' failure to plead an essential element of a Sherman Antitrust claim.

***a.      Standing***

The City defendants assert that plaintiffs have failed to allege sufficient facts to establish antitrust standing. "[S]tanding in an antitrust case is more onerous than the conventional Article III inquiry." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 402 (6th Cir. 2012). "[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement [it] must [be] dismiss[ed] . . . as a matter of law—lest the antitrust laws become a treble-damages sword rather than the shield against competition-destroying conduct that Congress meant them to be." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc). As a result of this high pleading hurdle, "the federal courts have been 'reasonably aggressive' in weeding out meritless antitrust claims at the pleading stage[.]" *Id.* (quoting *Valley Prods. Co. v. Landmark*, 128 F.3d 398, 403 (6th Cir. 1997)).

A district court decides whether a plaintiff has adequately pleaded antitrust standing by balancing five factors:

6

> (1) the causal connection between the antitrust violation and harm to the plaintiff and whether that harm was intended to be caused; (2) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market; (3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative; (4) the potential for duplicative recovery or complex apportionment of damages; and (5) the existence of more direct victims of the alleged antitrust violation.

*Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir. 1983) (citation omitted). The City defendants argue that plaintiffs have alleged no facts in support of the five factors necessary to establish antitrust standing. They claim that plaintiffs make only the general assertion that they "face steep hurdles to constructing Wireless Telecommunications Facilities on their property[.]" (FAC ¶ 32.)

The Court agrees that plaintiffs, despite having amended their complaint following the first motions to dismiss filed by the defendants, have failed to plead sufficiently to support antitrust standing. Plaintiffs only generally allege that they "own, or may otherwise have available to them for development, properties within Wooster which are subject to the requirements of Chapter 1173[,]" and that "[p]rior to the enactment of the Ordinance, [they] had been in contact with the representatives of at least one cellular provider about the possible development of property for the location of a commercial Wireless Telecommunications Facility or Tower." (FAC ¶ 54; *see also* ¶¶ 65, 76, 89.) Although they allege they are competitors in the relevant markets (*id.* ¶¶ 55, 66, 77, 90; *see also* n.4, *supra*, for plaintiffs' description of the relevant markets), they supply no facts to support that allegation.

"The antitrust laws protect the serious potential competitor as well as the established business." *Huron Valley Hosp. Inc. v. City of Pontiac*, 666 F.2d 1029, 1033 (6th Cir. 1981). "Courts must attempt to distinguish the serious potential competitor who has been illegally kept out of the market from the inchoate business enterprise with a mere hope of entry."

7

*Id.* "The test for determining whether a potential competitor has a business interest protected by the antitrust laws is whether he has both the *intention* and *preparedness* to compete." *Id.* (emphasis in original) (citation omitted). Plaintiffs have pled neither.

Moreover, and importantly, plaintiffs fail to allege actual anticompetitive behavior or an antitrust injury. Their complaint focuses on possible harm to themselves, but does not allege how the City defendants' actions "harmed *competition* in the relevant market, as the Sherman Act requires." *Elias v. Fed. Home Loan Mortg. Corp.*, No. 13-2392, 2014 WL 3702597, at *7 (6th Cir. July 25, 2014) (emphasis in original) (dismissal based on lack of antitrust standing). "To prove antitrust injury, the key inquiry is whether *competition*--not necessarily a competitor--suffered as a result of the challenged business practice." *CBC Companies, Inc. v. Equifax, Inc.*, 561 F.3d 569, 571-72 (6th Cir. 2009) (citing *NicSand,* 507 F.3d at 450 ("[O]ne competitor may not use the antitrust laws to sue a rival merely for vigorous or intensified competition."); *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.,* 485 F.3d 880, 887 (6th Cir.2007) (requiring an antitrust plaintiff to demonstrate that "the alleged violation tended to reduce competition overall" and that "the plaintiff's injury was a consequence of the resulting diminished competition")).

Here, plaintiffs have not alleged that they are actual competitors in the relevant market. Nor have they alleged harm to competition in general, as opposed to just harm to themselves in particular. In short, plaintiffs' general allegations are insufficient to meet the onerous antitrust standing requirements. On this basis, the City defendants' motion to dismiss is granted.

Although lack of standing is a more than sufficient ground for complete dismissal of this lawsuit as to the City defendants, the Court will address an additional argument made by the City defendants.

### b.  Immunity from Antitrust Liability

The City defendants next argue that, even if plaintiffs have standing, the City defendants must be dismissed because they enjoy state-action immunity.

In *Parker v. Brown*, 317 U.S. 341, 352, 63 S. Ct. 307, 87 L. Ed. 315 (1943), the Supreme Court, relying on principles of federalism and state sovereignty, held that antitrust laws do not encompass anticompetitive restraints imposed by the State "as an act of government." "This doctrine is known as state-action, or *Parker*, immunity." *VIBO Corp. Inc. v. Conway*, 669 F.3d 675, 686 (6th Cir. 2012). The Supreme Court has subsequently determined that, although state-action immunity does not apply directly to local governments (because they are not themselves sovereign), *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S. Ct. 1713, 85 L. Ed. 2d 24 (1985), it can apply where "a municipality's restriction of competition [is] an authorized implementation of state policy[.]" *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 370, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991). A municipality need only show "that a clearly articulated state policy authorized it to engage in anticompetitive conduct." *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002) (citing *Hallie*, 471 U.S. at 46). There is no requirement that the state's authorization be explicit. *Hallie*, 471 U.S. at 42. Rather, the anticompetitive conduct need only be "a foreseeable result of [the State's] empowering the City" with "broad authority to regulate." *Id.*

The City defendants argue that "'Ohio law has long recognized that the enactment of zoning laws by a municipality is an exercise of its police power as described under Section 3,

9

Article XVIII of the Ohio Constitution.'" (City MTD at 271, quoting *Rispo Realty & Dev. Co. v. City of Parma*, 564 N.E.2d 425, 427 (Ohio 1990).) They point to several Ohio statutes that authorize municipalities to enact zoning ordinances to regulate the height, design and location of structures within their municipal boundaries. (*Id.*, citing Ohio Rev. Code § 713.04 ("The legislative authority of a municipal corporation may authorize the planning commission to control the height, design, and location of buildings."); Ohio Rev. Code § 713.06 ("The planning commission of any municipal corporation may frame and adopt a plan for dividing the municipal corporation . . . into zones or districts[.]"); Ohio Rev. Code § 713.07 (The municipal "legislative authority . . . may regulate and restrict the location of buildings and other structures and of premises to be used for trade, industry, residence, or other specified uses[.]").)

The City defendants argue that "'[t]he very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition, particularly on the part of new entrants.'" (City MTD at 273, quoting *Omni Outdoor Adver.*, 499 U.S. at 373.) They further argue that "'monopolistic control of services . . . is part and parcel to the sovereign prerogative.'" (*Id.* at 274, quoting *McGuire v. Ameritech Servs., Inc.*, 253 F. Supp. 2d 988, 1010 (S.D. Ohio 2003).) As a result, according to the City defendants, "even if the Ordinance would create a monopoly restricting [p]laintiffs' access to the cellular tower leasing market, the [City] [d]efendants are immune from antitrust liability regardless of any potential anticompetitive effects of the City's zoning determinations." (*Id.*)

The City defendants also argue that they have the authority under Art. XVIII, § 4 of the Ohio Constitution, as well as Ohio Rev. Code § 715.011, to enter into leases and contracts, and to reject bids. They claim that the Ordinance merely authorized them to enter into a technical

10

services contract to facilitate radio and/or cellular communications for city services. Any anticompetitive effects, according to the City, are the foreseeable result of these grants of authority.

In opposition, plaintiffs first argue that state-action immunity is not available to the City defendants "because the market-participant exception precludes it." (Opp. to City MTD at 314, citing *VIBO Corp., supra*.) In the alternative, plaintiffs argue that, even if the exception does not apply, the City defendants have failed to establish the necessary elements for state-action immunity.

Plaintiffs claim that the City defendants' actions went beyond the mere regulatory authority the City has for purposes of zoning. They claim the City has become a "market participant" and that, as such, the City defendants forfeit any state-action immunity from antitrust claims. In their view, the City "is seeking to participate in the private market for leasing land for the construction of Wireless Telecommunications Facilities[,]" and is doing so for "private economic gain[.]" (Opp. to City MTD at 316.)

Plaintiffs' argument rests on language in *Omni Outdoor Advertising* where the Supreme Court stated: "We reiterate that, **with the possible market participant exception**, *any* action that qualifies as state action is '*ipso facto* . . . exempt from the operation of the antitrust laws[.]'" *Omni Outdoor Adver.*, 499 U.S. at 379 (bolding added; italics in original). Plaintiffs assert that there is a circuit split on application of this so-called "market-participant exception," but that the Sixth Circuit has held that the exception applies in this circuit. (Opp. to City MTD at 315, citing *VIBO Corp., supra*.)

11

The case law in this area is not entirely clear, but, if there is a circuit split, it relates to whether a market-participant exception *exists* in the antitrust realm.[5] In fact, in the very case cited by plaintiffs in support of their argument, the Supreme Court indicated that *Omni Outdoor Advertising* merely "le[ft] open the possibility of a market participant exception[.]" *F.T.C. v. Phoebe Putney Health Sys., Inc.*, -- U.S. --, 133 S. Ct. 1003, 1010 n.4, 185 L. Ed. 2d 43 (2013) (declining an *amicus curiae* request to "recognize and apply a 'market participant' exception to state-action immunity" because it had not been raised in the lower court); *see also Helen Brett Enters. v. New Orleans Metro. Convention & Visitors Bureau, Inc.*, Civ. A. No. 95-2888, 1996 WL 346314, at *4 (E.D. La. June 25, 1996) ("the Supreme Court's statement in *Omni* . . . does not expressly recognize the existence of [a market participant] exception") (citing *Perigould Cablevision, Inc. v. City of Perigould*, 930 F.2d 1310, 1212-13 (8th Cir. 1991)); *Limeco, Inc. v. Div. of Lime of Miss. Dep't of Agric. & Commerce*, 778 F.2d 1086, 1087 (5th Cir. 1985) (there is no "commercial exception" under which a state acting as a competitor in a commercial activity would forfeit its state-action immunity).

Nor does *VIBO Corp.* offer any assistance to plaintiffs. Although citing *Omni Outdoor Advertising* for the legal principle that a "market participant" is not protected by immunity, the court in *VIBO Corp.* also noted that a government entity "is a market participant when it acts 'in a proprietary capacity as a purchaser or seller with regard to the challenged action' or its actions 'constitute[] direct state participation in the market.'" *VIBO Corp., Inc.*, 669 F.3d at 687 (quoting *Huish Detergents, Inc. v. Warren Cnty.*, 214 F.3d 707, 714-15 (6th Cir.

---

[5] Although no commercial or market-participant exception has been definitively recognized in the antitrust context, it is not an entirely new concept. The exception has long been recognized in the context of claims brought under the dormant commerce clause. *A.B. Bedell Wholesale Co., Inc. v. Philip Morris Inc.*, 263 F.3d 239, 265 n.55 (3d Cir. 2001) ("Dormant Commerce Clause cases have found the market participant exception appropriate where the state action constituted a direct state participation in the market.") (internal quotation marks and citation omitted).

2000) (examining a state's market participant status in the dormant commerce clause context))
(additional internal citations omitted).

Here, pursuant to Ordinance No. 2013-36, the City defendants entered into a
contract with TowerCo to build and maintain a new cell tower for use by the City's safety
services (whose communications systems had been located on the City's water tower, which was
being demolished). This cell tower was exempt from zoning requirements under § 1173.09 of the
City's Codified Ordinances. Thus, the City had a legitimate public purpose for its tower-building
action. The mere fact that the City also earned rental revenues by permitting TowerCo to
collocate on the tower the equipment of other cellular providers does not transform the City
defendants into market participants. In fact, one of the goals of the ordinance, expressed in §
1173.01(e), is "[t]o promote collocation of wireless telecommunications facilities in order to
decrease the number of towers in the City[.]" Section 1173.03(a) also expressly permits such
collocation. Again, it is evident that the City's action promotes a dual public purpose: to limit the
number of cell towers and to earn revenues for the City. This does not amount to market
participation.

The City defendants' actions enjoy state-action immunity and are not subject to
any exception to that immunity. "The reality of government operations is that monopolistic
control of services, whether procured by the government for its own use, or provided for third
parties on behalf of the government, produces efficiencies." *McGuire v. Ameritech Servs., Inc.*,
253 F. Supp. 2d 988, 1006, 1010 (S.D. Ohio 2003) (rejecting a claim that the state's choice to
contract out the operation of its prison phone system to a private party "depriv[ed] the market for
inmate-initiated telephone calls in Ohio of competition[,]" finding that such contract did "not
make it any less a phone system of the State itself").

13

As an alternative to the market-participant exception to state-action immunity, plaintiffs argue that the City has failed to establish the necessary elements for state-action immunity. Plaintiffs assert that, since municipalities are not, strictly speaking, sovereign, "'[a]s with private parties, immunity will only attach to the activities of local governmental entities if they are undertaken pursuant to a clearly articulated and affirmatively expressed state policy to displace competition.'" (Opp. to City MTD at 317, quoting *Phoebe Putney*, 133 S. Ct. at 1011, internal quotation marks and citation omitted.) Plaintiffs argue that the grant of authority to enact zoning ordinances is too general in nature to meet that test. Plaintiffs do not challenge the City's right to enact zoning ordinances. Rather, they argue that "the Supreme Court has rejected the 'proposition that the general grant of power to enact ordinances necessarily implies state authorization to enact specific anticompetitive ordinances.'" (Opp. to City MTD at 318, quoting *Phoebe Putney*, 133 S. Ct. at 1012 (internal quotation marks and citation omitted).)

Plaintiffs argue that the City has improperly "us[ed] the zoning exemption applicable only to itself to gain 'a market advantage in a purely private business activity that the municipality is engaged in for its private economic gain.'" (Opp. at 319, quoting FAC, various paragraphs.) They further argue that the City has enacted "onerous restrictions on development for all competitors, which were removed for one competitor only—the City . . . [and] split the monopoly profits [with TowerCo] by actually implementing the monopolization scheme." (*Id.*) Plaintiffs assert that "Ohio has a long history of hostility to municipalities entering the competitive market, let alone monopolizing it." (*Id.* at 319, citing *City of Cleveland v. Ruple*, 200 N.E. 507 (Ohio 1936).)

14

Plaintiffs also argue that the City's general authority to lease municipal property does not authorize it to "'transgress antitrust requirements by exercising their general powers in anticompetitive ways.'" (*Id.* at 320, quoting *Phoebe Putney*, 133 S. Ct. at 1014.)

The Court is not persuaded by plaintiffs' arguments. The City has the authority to construct a tower and locate its communications equipment on the tower, without having to meet any zoning requirements that others would have to meet. This is not anticompetitive behavior. This behavior is not a displacement of competition. Rather, it is action undertaken for a public purpose.[6]

The Court concludes that the City defendants' actions are entitled to state-action immunity. Therefore, the City defendants' motion to dismiss shall be granted for this separate reason.

### c.      *Failure to Plead an Essential Element of Each Claim*

Finally, the City defendants assert that plaintiffs' claims fail as pled. First, they argue that plaintiffs have failed to establish a "relevant geographic market." (City MTD at 277.) Second, the City defendants argue that neither count 2 nor count 3 of the complaint pleads the necessary element of monopoly power. (*Id.* at 279-80.)

The Court finds no need to address this argument in support of dismissal, having concluded that dismissal of the claims against the City defendants is appropriate due to both lack of standing and application of state-action immunity.

### d.      *Conclusion as to the Motion to Dismiss of the City Defendants*

---

[6] The Court perceives no circumstance under which a city could act "for its private economic gain," as asserted by plaintiffs. (Opp. at 319.) If a city manages to work out a good deal when it enters a contract with a service provider, any resulting economic gain is for the *public* good and benefits the *public* coffers. The phrase "private economic gain" has no meaning in this context.

For the reasons discussed above, the City defendants' motion to dismiss (Doc. No. 20) is **GRANTED**.

### 2.    Defendant TowerCo's Motion to Dismiss (Doc. No. 21)

Defendant TowerCo moves to dismiss based on (1) plaintiffs' failure to allege a plausible antitrust conspiracy; (2) plaintiffs' failure to allege an antitrust injury; and (3) plaintiffs' failure to allege certain essential elements of an antitrust claim. TowerCo also argues that it is protected by the *Noerr-Pennington* Doctrine.

#### a.    *Failure to Allege Facts Supportive of Conspiracy Claims*

TowerCo is implicated only in Counts One and Four of the complaint. Both are claims of conspiracy, with Count One claiming a conspiracy between the City and TowerCo to restrain trade, and Count Four claiming a conspiracy between the City and TowerCo to monopolize tower space.

TowerCo argues that "'[t]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express[.]'" *Twombly*, 550 U.S. at 553 (quoting *Theatre Enter. Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540, 74 S. Ct. 257, 98 L. Ed. 273 (1954)). To survive a motion to dismiss, the complaint must set forth "allegations plausibly suggesting (not merely consistent with) agreement[.]" *Id.* at 557; *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009) ("a complaint alleging violations under § 1 of the Sherman Act cannot survive a motion to dismiss unless it avers facts that raise a reasonable expectation that discovery will reveal evidence of an illegal agreement") (citing *Twombly*). "In the wake of *Twombly*, . . . bare

16

assertions of conspiracy no longer supply an adequate foundation to support a plausible § 1 claims." *Id.* at 902-03.

In opposition, plaintiffs argue that TowerCo has misstated the pleading standard by confusing it with the standard for summary judgment. (Opp. to TowerCo MTD at 335-36.) Plaintiffs point to *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 869 (6th Cir. 2012), for the proposition that "a plaintiff need not allege a fact pattern that 'tends to exclude the possibility' of lawful, independent conduct." (*Id.* at 336.)

Plaintiffs argue that "both the allegations in the FAC and the public record of TowerCo's work with, and on behalf of, the City evidence an anticompetitive agreement." (*Id.*) In support of this assertion, plaintiffs reference five exhibits that are not contained, or even alluded to, in the FAC. These exhibits are not to be considered on a motion to dismiss, without first converting it to a dispositive motion, which the Court declines to do.

Plaintiffs' complaint does no more than allege that TowerCo presented the City with a proposal for a land lease and construction of a tower for the City's and TowerCo's use. (FAC ¶ 8.) This is precisely what TowerCo is in the business of doing, and such actions are entirely in its business self-interest. Such conduct cannot form the basis for inferring a conspiracy.

Furthermore, "[c]ourts have identified two major types of antitrust conspiracies to restrain trade: horizontal and vertical." *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1013 (6th Cir. 2005) (citation omitted). "Horizontal conspiracies involve agreements among competitors at the same level of market structure to stifle trade, such as agreements among manufacturers or among distributors to fix prices for a given product, and therefore may constitute *per se* violations of antitrust law. Vertical conspiracies, on the other hand, involve

17

agreements among actors at different levels of market structure to restrain trade, such as agreements between a manufacturer and its distributors to exclude another distributor from a given product and geographic market." *Id.* (internal citations and quotation marks omitted). Plaintiffs' allegations describe no such behavior.

Any claim of conspiracy to monopolize fails for the same reason. *See Smith v. N. Michigan Hosp., Inc.*, 703 F.2d 942, 954 (6th Cir. 1983) ("[t]he claim of a conspiracy to monopolize fails for the same reason as did the . . . section 1 claims; there has been no factual basis presented upon which to reasonably infer the existence of a conspiracy in view of the legitimate explanations for defendant's conduct").

To the extent plaintiffs have failed to allege any facts in support of a conspiracy, TowerCo is entitled to dismissal.

### b. *Failure to Allege Antitrust Injury*

TowerCo argues that plaintiffs have also failed to allege the requisite antitrust injury. This is, in essence, a standing argument. Even if the Court were to assume that the conspiracies alleged by the plaintiffs were a violation of the Sherman Act, "the relevant question is whether plaintiffs were 'injured' by that violation." *Hodges v. WSM, Inc.*, 26 F.3d 36, 38 (6th Cir. 1994). Under the statutory scheme, only persons "injured" by anticompetitive or monopolistic conduct have a cause of action. *Id.* (citing *Brunswick Corp. v. Pueblo Bowl-O-Matic, Inc.*, 429 U.S. 477, 97 S. Ct. 690, 50 L. Ed. 701 (1977)).

Plaintiffs fail to allege how any action by TowerCo, either individually or in concert with the City defendants, caused them harm. They allege only very generally that they "own, or may otherwise have available to them for development, properties within Wooster which are subject to the requirements of Chapter 1173[,]" and that "[p]rior to the enactment of

18

the Ordinance, [they] had been in contact with the representatives of at least one cellular provider about the possible development of property for the location of a commercial Wireless Telecommunications Facility or Tower." (FAC ¶¶ 54, 89.) "[C]laims of injury by reason of antitrust violations are compensable only when the injury flows directly from the unlawful act." *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1107 (6th Cir. 1989). Even assuming, for the sake of argument, that the allegations of the complaint sufficiently allege an antitrust violation, the allegations simply allege no injury.

TowerCo, like the City defendants, is entitled to dismissal of the claims against it due to plaintiffs' lack of standing, in particular, their failure to allege an antitrust injury.[7]

### c.    *TowerCo is Protected by the Noerr-Pennington Doctrine*

Finally, TowerCo argues that, to the extent this Court might construe plaintiffs' complaint as alleging that TowerCo's lease proposal was somehow a request for action by the City with regard to its zoning laws, such petitioning of a governmental body is exempt from antitrust scrutiny.

"Under the *Noerr-Pennington* doctrine—established by *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)— defendants are immune from antitrust liability for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, -- U.S. --, 134 S. Ct. 1749, 1757, 188 L. Ed 2d 816 (2014).

---

[7] TowerCo also argues that plaintiffs have failed to allege any plausible relevant market and the requisite specific intent. (TowerCo MTD at 294-298.) Given the fundamental flaw of lack of standing, the Court need not address these additional arguments.

Plaintiffs argue that this immunity has no bearing in this case, where they have alleged that the City defendants are market-participants. This immunity doctrine, according to plaintiffs, only protects private parties' communications with a governmental entity "where a restraint upon trade or monopolization is the result of valid governmental action." (Opp. to TowerCo MTD at 347, quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499, 108 S. Ct. 1931, 100 L. Ed. 2d 497 (1988)).

In view of the Court's other rulings, there is no need to address this particular argument and the Court declines to do so.

### d.    *Conclusion as to the Motion to Dismiss of TowerCo*

For the reasons discussed above, TowerCo's motion to dismiss (Doc. No. 21) is **GRANTED**.

## III. MOTION FOR PRELIMINARY INJUNCTION

On October 21, 2014, plaintiffs filed a motion for preliminary injunction and for a temporary restraining order (Doc. No. 27), seeking an order of this Court enjoining the City "from causing a commercial Wireless Telecommunications Facility to be built on any of its property under the exemption set forth in § 1173.09 of the Codified Ordinances of the City of Wooster until this case is resolved." (*Id.* at 387.) Plaintiffs allege that the motion was necessitated by an amendment to the Ordinance which significantly expanded the existing exemption, thereby "solidify[ing] [the City's] already dominant market power[.]" (*Id.* at 393.) Plaintiffs' continue to argue that the City is "[u]sing the § 1173.09 exemption to enter into the relevant markets for the City's pure economic gain [which] is an exercise of market power that directly excludes competition and frees up the City to dominate the relevant markets." (*Id.* at 394.)

"When deciding whether to issue a preliminary injunction, a district court should address four factors: (1) the likelihood of success on the merits; (2) the irreparable harm that could result if the injunction is not issued; (3) the impact on the public interest; and (4) the possibility of substantial harm to others." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (citing *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir. 1988)).

Plaintiffs' argument relies upon its assertion that the City has become a "market participant" in the market for land leasable for the location of wireless telecommunications facilities and the market for leasable space on wireless telecommunications towers that is technically adequate to provide private cellular services. The Court has rejected this argument and finds nothing in plaintiffs' motion that would otherwise alter the analysis with respect to the motions to dismiss. In view of this conclusion, none of the four factors above weigh in plaintiffs' favor.

Accordingly, plaintiffs' motion for a preliminary injunction and for a temporary restraining order (Doc. No. 27) is **DENIED**.

## IV. CONCLUSION

As set forth previously, the motions to dismiss filed by the City defendants (Doc. No. 20) and by TowerCo (Doc. No. 21) are both **GRANTED**. Plaintiffs' motion for preliminary injunction and temporary restraining order (Doc. No. 27) is **DENIED**.

This case is dismissed.

**IT IS SO ORDERED**.

Dated: October 23, 2014

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

21